# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL ELIA, individually and as Successor Trustee to the Alan Elia Declaration of Trust Dated March 18, 2002,<br><br>**Plaintiff**<br><br>v.<br><br>JOHN ROBERTS, and individual; TEXAS ENVIRONMENTAL PRODUCTS, INC., a Texas corporation; and TEXAS ENVIRONMENTAL PRODUCTS, a partnership, joint venture or other form of business organization unknown, and DOES 1 through 20, inclusive,<br><br>**Defendants** | CASE NO. 1:16-cv-0557 AWI EPG<br><br>ORDER RE:MOTIONS IN LIMINE<br><br>(Docs. 34, 35, 36, 39, 40, 41, 42, and 43) |

## I. Background

Defendant John Roberts ("Roberts") founded and owned Texas Environmental Products, Inc. ("TEP Inc.") which manufactured and sold fertilizer. Alan Elia ("Alan Elia") sold fertilizer in the Fresno area on behalf of Defendants starting in 2004. Defendants assert that Alan Elia was an independent contractor who worked on commission. Plaintiff asserts that Alan Elia formed a partnership with Roberts; the partnership conducted business as a new entity also named Texas Environmental Products ("TEP Partnership"). Alan Elia died in February 2015. Roberts continued the sale of fertilizer in this area and sold TEP Inc. in December 2015. Plaintiff Ariel Elia ("Ariel Elia" or "Plaintiff") contends that this sale also encompassed TEP Partnership. Defendants contend that TEP Partnership does not exist.

Alan Elia created a trust in 2002 ("Trust") whose beneficiaries are his children Ariel and Britz Elia ("Beneficiaries"). Alan Elia's interest in the business relationship with Defendants belongs to the Trust. Alan Elia was the original trustor/trustee. Robyn Esraelian was the attorney who represented the Trust. After Alan Elia's passing, Harold Zinkin ("Zinkin") became the trustee. In 2015, Zinkin and Esraelian communicated with Roberts about monies owed to the Trust. They attempted to reach a settlement based on an understanding that Alan Elia was an independent contractor. However, the Beneficiaries opposed the settlement, arguing that Alan Elia was a partner. Based on this difference of opinion, the Beneficiaries and Zinkin agreed that Ariel Elia would replaced Zinkin as the trustee.

In February 2016, Ariel Elia, both in her personal capacity and as the trustee for the Trust, filed suit against Defendants on claims of accounting, breach of fiduciary duty (to the partnership), and declaratory relief. Additionally, Plaintiff seeks an additional double damages penalty under Cal. Prob. Code § 859 for a bad faith breach of fiduciary duty to a trust. Plaintiff proceeds under two theories of monetary relief. First, under the theory that Alan Elia was a partner, Plaintiff seeks 50% of the profits from fertilizer sales in 2015 and 50% of the proceeds from the sale of TEP Partnership. Second, under the theory that Alan Elia was an independent contractor, Plaintiff seeks the commission on any sales he made in January and February of 2015.

**II. Legal Standard**

Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984). Fed. Rule Evid. 403 states generally that, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). The parties must abide by the court's rulings but may ask for reconsideration as trial progresses. "[A]

ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court. The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." United States v. Bensimon, 172 F.3d 1121, 1127 (9th Cir. 1999), citing Luce v. United States, 469 U.S. 38, 41-42 (1984).

### III. Discussion

**A. Defendants' Request for Bifurcation (Doc. 39)**

The causes of action in this case are for accounting, breach of fiduciary duty, declaratory relief, and a request for special damages under Cal. Prob. Code § 859. Doc. 33, Pretrial Order, 8:16-9:2 and Doc. 46, Defendants' Trial Brief, 9:4-12. Defendants request that the trial be bifurcated in the following manner: the first phase would be a jury trial dealing with accounting, breach of fiduciary duty, and declaratory relief while the second phase would be a bench trial dealing with Section 859 bad faith claim. Doc. 39, 1:28-2:12. Plaintiff agrees to bifurcation in concept but argues that Section 859 must be further separated into liability and damages portions, with liability determined in the first phase by a jury. Doc. 54, 2:13-17.

Bifurcation is appropriate in this case. The Section 859 claim should be heard separately from the underlying case to allow a wider set of evidence to be considered for determining bad faith or good faith. The parties have not fully fleshed out which claims (accounting, breach of fiduciary duty, declaratory relief, and Section 859) should be heard by a jury and which should be determined by the court. The parties are directed to file any additional briefing they have by noon Friday, October 27, 2017. The precise structure of the trial will be dealt with at 8:30 AM Tuesday, October 31, 2017.

Defendants' motion is granted in part and reserved in part.

**B. Defendants' Motion to Exclude Witnesses From the Courtroom (Doc. 43)**

Plaintiff does not oppose this motion. Doc. 55. Defendants' motion is granted.

**C. Defendants' Motion to Exclude Alan Elia's Past Statements (Doc. 40)**

Defendants seek to exclude certain statements made by Alan Elia as inadmissible hearsay, namely "statements of customers or friends that Alan Elia held himself out as a partner. In addition, Plaintiffs may offer assertive conduct by Elia such as his unilateral execution of assignments of interest in an effort to demonstrate that the relationship between Mr. Elia and Mr. Roberts and/or TEP was a partnership." Doc. 40, 2:11-15, citations omitted. Defendants' motion only seeks to exclude Alan Elia's statements that Roberts was unaware of; Defendants concede that statements Roberts knew about or adopted are admissible. Doc. 40, 3:4. Plaintiff asserts that even statements Roberts was unaware of are admissible on three grounds: as verbal acts, as statements to Alan Elia's state of mind, and as an admission of an agent. Doc. 51, 14:19-22, 15:18-26, and 16:24-27.

First, Plaintiff argues that Alan Elia's statements asserting that he and Roberts operate TEP Partnership as a partnership are verbal acts not subject to the hearsay prohibition. Doc. 51, 14:19-15:3. The advisory committee notes to Fed. Rule Evid. 801 states "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights."

Regarding partnerships, Plaintiff explains that under current California law,

> (a) the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership.
> ....
> (c) In determining whether a partnership is formed, the following rules apply:
> ....
>     (3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received for any of the following reasons:
>     ....
>         (B) In payment for services as an independent contractor or of wages or other compensation to an employee.

Cal. Corp. Code § 16202. In addition to evidence of sharing profits, the conduct of the parties can demonstrate the existence of a partnership: "A partnership need not be evidenced by a writing. It may be oral. And where there is no writing evidencing the agreement, the existence of a

4

partnership may be evidenced by the conduct of the parties." Calada Materials Co. v. Collins, 184 Cal. App. 2d 250, 253 (Cal. App. 2nd Dist. 1960). Plaintiff also explained that the intention of the parties regarding the business relationship as revealed by the form of their agreement is also relevant for determining whether a partnership exists, citing Commissioner v. Tower, 327 U.S. 280, 286-87(1946). As a general rule, "undisclosed statements regarding intent or understanding...are irrelevant to contract interpretation under the objective theory of contracts." Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal. App. 4th 944, 960 (Cal. App. 4th Dist. 2003). Where the statements are known to both parties, that evidence "may shed light on the mutual intention of the parties." Pac. Gas & Elec. Co. v. Zuckerman, 189 Cal. App. 3d 1113, 1141 (Cal. App. 3rd Dist. 1987). The key considerations for determining whether a partnership exists are the actual conduct of the relationship and the facts jointly known to the parties.

  Plaintiff asserts that Alan Elia's statements to other people that he and Roberts were partners in the sale of fertilizer is "conduct of the parties" that is relevant to determining whether a partnership existed. Specifically, Plaintiff argues that "statements and conversations as to the making and terms of an oral agreement may be testified to by any person who heard them and the prohibition against hearsay does not preclude relevant testimony as to what one or both of the contracting parties said with respect to the making of or terms of an oral agreement." Doc. 51, 12:28-13:4. The two cases Plaintiff cites for this broad proposition only state that the spoken words making a contract constitute verbal acts; they do not say that words which help in interpreting the terms of the contract qualify. See Cal. Trucking Asso. v. Bhd. of Teamsters & Auto Truck Drivers, 679 F.2d 1275, 1291 n.20 (9th Cir. 1981) (statement was not hearsay as it was rejection of a contract); NLRB v. H. Koch & Sons, 578 F.2d 1287, 1290 (9th Cir. 1978) (statement was not hearsay as it was acceptance of an offer). Verbal acts are not hearsay because their utterance has the independent effect of creating legal obligations. They are different than evidence in the form of statements which shed light on the existence of underlying legal obligations but do not create them.

  In this case, the statements Plaintiff wish to offer do not have the independent legal effect

of creating a partnership but must rather be considered evidence of a partnership. Alan Elia telling someone that he is in a business partnership with Roberts does not create the partnership; it adds to the body of evidence that suggest the partnership exists. As such, the statements Plaintiff seeks to use are offered for the truth of the matter asserted and are generally hearsay. Among the evidence Defendants seek to exclude is a document signed by Alan Elia which transferred his "rights, title and interest in and to the business known as 'TEXAS ENVIRONMENTAL PRODUCTS'" to the Trust. Doc. 40, Ex. 2, RLE075. This document does qualify as a verbal act. The document has independent legal effect which is outside of hearsay. However, it is not relevant as it goes neither to the conduct of the relationship or is a fact jointly known to Alan Elia and Roberts. It must be excluded on that ground.

Second, Plaintiffs argue that Alan Elia's statement's to third parties show his state of mind and are exceptions to hearsay under Fed. Rule Evid. 803(3). The relevant language reads: "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:.... (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. Rule Evid. 803. In key part, the hearsay exception does not include "a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." While a statement as to motive, intent, or plan is an exception to hearsay, a statement as to belief is not. There is a distinct separation between intention or motive and belief. In one case where there was a dispute over the existence of a partnership agreement, the court found certain statements admissible as it reflected a declarant's intent as to what kind of agreement he wanted to enter into. The court admitted testimony "by Ross Dagata, that Manual Sherman expressly disclaimed any ownership interest in the shows. RIBA [argues] that the Dagata testimony came within an exception to the hearsay rule, since Dagata testified as to Manual Sherman's state of mind or intent in signing a contract which contained the word 'partners.'....The district court acted well within its discretion in finding that

Manual Sherman, a sophisticated businessman, likely would have made his statement to Dagata, regarding his understanding of a contract, *before* he executed the contract." Southex Exhibitions, Inc. v. R.I. Builders Ass'n, 279 F.3d 94, 103 n.8 (1st Cir. 2002), emphasis in original. In Southex, the statement was not proffered for what Manual Sherman **believed** the contract to be but rather what he **intended** to contract for in the future. In contrast, an equivalent statement about past events is not admissible. United States v. Hayat, 710 F.3d 875, 895 (9th Cir. 2013) ("the statement 'I never intended on going to a camp' is backward-looking, expressing Hayat's memory of his earlier states of mind, and so is not admissible under Rule 803(3)"). The advisory committee notes to Fed. Rule Evid. 803 explains, "The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." The Ninth Circuit explains that the Rule 803(3) exception does not apply (statements remains hearsay) "when the statements are offered to prove the truth of the fact underlying the memory or belief." Wagner v. Cty. of Maricopa, 747 F.3d 1048, 1053 (9th Cir. 2013).

     In this case, Plaintiff seeks to introduce testimony from third parties that Alan Elia told them he was in a partnership with Roberts. Plaintiffs argue that this shows Alan Elia's belief as to the nature of his business relationship with Roberts. These statements would be used to prove the truth of the matter underlying the belief, namely that a partnership existed. Thus, the statements do not qualify for the hearsay exception under Rule 803(3). A claim that Alan Elia's statements recounting his thought process concerning his past decision to enter into business with Roberts is similarly barred as past intent does not qualify for the hearsay exception under Rule 803(3). Additionally, there is a lack of relevance if the evidence shows only the subjective belief of Alan Elia that was not communicated to Roberts in some way.

     Third, Plaintiff makes the argument that Alan Elia was either a partner and thus an agent of the TEP Partnership or an employee of Roberts. Rule 801 states that a statement by an agent or employee (on a matter within the scope of the agent/employee relationship) of a party opponent may be offered against that party opponent as an exclusion form hearsay. Fed. Rule Evid.

801(d)(2)(D). However this exclusion does not apply when the agent/employee and the party opponent have conflicting litigation positions. United States v. King, 134 F.3d 1173, 1176 (2nd Cir. 1998). In one case, third party Abramov was a former officer and director of defendant Close-Up; while in that position, Abramov told plaintiff's attorney Berkovich that there was no agreement restricting his right to sell his ownership stake in Close-Up. Vardanyan v. Close-Up Int'l, Inc., 2007 U.S. Dist. LEXIS 94942, at *2 (E.D.N.Y. Dec. 28, 2007). The court found the "conversations with Berkovich were intended to encourage this lawsuit against Close-Up. Abramov, who hoped to receive a percentage of any judgment against defendants, was essentially an adversary to Close-Up in this litigation....The purpose of this evidentiary rule is to allow a party's own admissions to be used against that party in court. Such statements are admissible because a litigant's own admissions are presumed to be trustworthy, and because a party should have no trouble explaining its own prior statements during the course of litigation. This rule is not applicable here, however, because Abramov was not acting as a representative or agent of Close-Up at the time of his conversation with Berkovich. Rather, he was acting in his own interest, which was opposed to that of Close-Up." Vardanyan v. Close-Up Int'l, Inc., 2007 U.S. Dist. LEXIS 94942, at *4 and *3 (E.D.N.Y. Dec. 28, 2007). In another case, a third party employee included details of racial discrimination in hiring practices in a letter of resignation; the Seventh Circuit found that the hearsay exclusion did not apply as "Olson was not speaking as an employee on behalf of Green when he resigned from his employment and accused Green of racial discrimination; to the contrary, in a very overt manner, Olson was acting not only independently of Green but also as its adversary. Because Olson's out-of-court statement was made in the context of terminating his employment (and placing himself in an adversarial relationship with Green), the justification for Rule 801(d)(2)(D) does not exist." Young v. James Green Mgmt., Inc., 327 F.3d 616, 622-23 (7th Cir. 2003). "Once [the principal's and agent's] interests deviated, the statements can no longer be found to be made during the course of the agency relationship." United States v. Petraia Mar. Ltd., 489 F. Supp. 2d 90, 97 (D. Me. 2007). No court within the ambit of the Ninth Circuit has yet applied this rule, but the Northern District identified a similar requirement for using an agent's invocation of the Fifth Amendment right against self incrimination as the basis

8

for an adverse inference applicable to the principal in a civil case. In re Tableware Antitrust Litig., 2007 U.S. Dist. LEXIS 21243, at *14 (N.D. Cal. Mar. 13, 2007) (an "identity of interests" before the inference can be made). The rule as explained by the Second and Seventh Circuits is logical and will be applied here.

In making claims of ownership over the business that go against the interests of Defendants, Alan Elia created a legally adversarial relationship between himself and Defendants. The Rule 801(d)(2)(D) exclusion from hearsay does not apply.

Defendants' motion is granted.

## D. Plaintiff's Motion to Exclude Testimony of Experts (Doc. 34)

Plaintiff seeks to exclude the expert testimony of Susan Thompson and William Civiello, accountants, on the basis that their opinions constitute inadmissible legal conclusions. Doc. 34, 2:2-8. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. Rule Evid. 704. The advisory committee notes to Rule 704 warns that "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed." One court found, "expert testimony that purports to explain the legal meaning of a term is forbidden...but testimony defining a term of art as it is used within a given field may be allowed. In addition, testimony that a specific item or event fits within the meaning of a statutory term may be admissible under Federal Rule of Evidence 702 even if it embraces an 'ultimate issue.'" Ways v. City of Lincoln, 206 F. Supp. 2d 978, 991 (D. Neb. 2002). Thus, courts seek to avoid having an expert state the ultimate legal conclusion, preferring to allow them to opine on facts that support the elements of the ultimate legal issue.

Civiello was Alan Elia's accountant for many years and will also testify as a percipient witness. In key part, he wrote a letter to Belinda Elia, Alan Elia's widow, how the taxes he prepared for Alan Elia supported a finding that he was an independent contractor and not a partner. Doc. 38, Ex. A. Civiello does not appear to have produced any expert report. Thompson was retained to "provide an Expert Report and testimony regarding the business relationship between Roberts and Alan Elia." Doc. 38, Ex. B, at 1. Thompson came to the conclusion that there was no partnership between Alan Elia and Roberts based upon the tax forms filed, depreciation schedules, the structure of payments to Alan Elia, and the overall running of the company. Doc. 38, Ex. B.

Defendants assert that these opinions are permitted as they do not touch on the ultimate legal issue: "Neither expert will offer an opinion that Roberts and Elia did not intend to enter into a partnership. Instead, they will offer testimony explaining that the way the financial records were kept indicated that Elia was an independent contractor and did not have an ownership interest in TEP. They will walk the jury through the accounting significance of booking payments as an officer salary, versus commission. They will explain the significance of reporting income paid on a 1099 or K-1 for tax purposes. Further, Ms. Thompson specifically will discuss how she would expect the TEP books to have been kept if a separate partnership was in fact formed between Roberts and TEP on the one hand and Elia and Cosgrove on the other." Doc. 48, 3:9-16. Defendants suggest that the ultimate legal issue is whether Roberts and Alan Elia intended to enter into a partnership. That is not quite correct; the ultimate legal issue to be determined by the jury is whether Roberts and Alan Elia actually did enter into a partnership, not just if they intended to. As a general matter, accounting is a field in which expert testimony can aid the trier of facts. See United States v. Morales, 108 F.3d 1031, 1039 (9th Cir. 1997). The significance of certain tax forms, the meaning of technical organizational documents, and whether the conduct of a business deviated from that organization would also be topics in which expert opinion would be useful.

Thompson and Civiello may neither give an opinion as to whether a partnership was formed nor to Alan Elia's and Roberts's intent regarding formation. They may only use their expertise to give an explanation as to TEP Inc's and/or TEP Partnership's accounting, taxes,

organizational structure, and the general manner in which the business was run. They may also opine on whether these practices (accounting, taxes, etc.) are consistent or inconsistent with a partnership relationship or a commission relationship.

Plaintiff's motion is granted in part and denied in part.

**E. Defendants' Motion to Exclude Testimony of Expert (Doc. 41)**

Defendants seek to exclude the testimony of expert witness Gordon Saito, an accountant. Doc. 41. In the joint pretrial statement, the parties agreed "Defendant, John Roberts, was the sole shareholder of the corporation named Texas Environmental Products, Inc." Doc. 32, 2:14-15. Defendants argue that Saito states Alan Elia was part owner of TEP Inc which would be confusing to the jury. Doc. 41, 2:1-4. Additionally, Defendants argue Saito's opinion lacks foundation and is irrelevant.

First, Saito's understanding as to the relationship of the parties is not inconsistent with Plaintiff's position. It appears that Plaintiff is arguing Roberts owned TEP Inc but the true entity that was conducting business was TEP Partnership which used TEP Inc as the conduit through which to process payments and orders. Doc. 52, 4:5-11. Saito reviewed the records of TEP Inc to determine who received payments from the business and in what proportions and concluded that Alan Elia and Roberts were sharing profits; his expert report makes separate references to TEP Partnership and TEP Inc. Doc. 41, Ex. 2. Though there may be some confusion over nomenclature as Plaintiff asserts that one entity is called Texas Environmental Products, Inc. while the other is Texas Environmental Products, that will be a distinction that Plaintiff will have to establish through their presentation of evidence.

Second, Defendants argue that Saito can not draw any conclusions about TEP Partnership by looking only at the records of TEP Inc, rendering his opinion irrelevant and based on no foundation. Doc. 41, 3:19-4:24. Under Plaintiff's theory of events, the financial records of TEP Inc would be the basis for determining whether TEP Partnership exists. As the alleged partnership used the TEP Inc form to conduct business, explaining the financial records of TEP Inc and what they revealed as to payments to Alan Elia and Roberts is relevant. Saito is not opining as to the

11

ultimate issue, whether a partnership was formed. Instead, he is using his expertise to calculate the sums and giving an opinion on whether the payments to Alan Elia are consistent with a commission structure or a profit sharing structure.

Defendants also argue that Saito's explanation is not necessary as Roberts will admit that he gave approximately 50% of the profits to Alan Elia each year. Doc. 58:2:9-14. As with Thompson and Civiello, the expertise of Saito is useful for explaining not just the mechanics of the business, but whether those workings are consistent or inconsistent with a partnership relationship or a commission relationship. Saito may neither give an opinion as to whether a partnership was formed nor to Alan Elia's and Roberts's intent regarding formation. He may use his expertise to opine on whether the payment practices are consistent or inconsistent with a partnership relationship or a commission relationship.

Defendants' motion is granted in part and denied in part.

**F. Plaintiff's and Defendants' Motions to Exclude Evidence Relating to Settlement Negotiations (Doc. 35 and 42)**

Plaintiff seeks to exclude any testimony, reference, or argument relating to settlement negotiations between Plaintiff and Defendants. Doc. 35. Defendants agree that the material should be excluded with respect to the first phase of trial; however, they assert that it should not be excluded with respect to the Section 859 claim. Doc. 42. In key part, Cal. Prob. Code § 859 states, "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the property recovered by an action under this part." Defendants also assert that "the settlement correspondences include emails that outline the various TEP items Plaintiff (the Trust) retained (for example see Constanzo Decl. Ex. E at 'RLF018'")[. T]he documents should be admitted in the event they are needed to prove that the value of TEP equipment retained by Plaintiff offsets

12

any amount potentially owed to Elia for unpaid commissions." Doc. 48, 2:8-12.

Federal Rule of Evidence 408 states

> (a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
>> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>>
>> (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The Ninth Circuit explains that "Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail. When statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured." Rhoades v. Avon Prods., 504 F.3d 1151, 1161-62 (9th Cir. 2007).

Plaintiff argues straightforwardly that the contents (and even the fact that settlement negotiations took place) would be used to "prove or disprove the validity or amount of a disputed claim," in this case bad faith under Section 859, and is thus prohibited. Defendants argue that in determining whether liability exists under Section 859, "the Court would be tasked with determining a different issue—namely, whether Mr. Roberts acted in 'bad faith' or 'wrongfully' in refusing to pay any amount to Mr. Elia's estate...the information would be highly relevant to show Mr. Robert's state of mind at the time following Mr. Elia's death and demonstrate that there was a good faith dispute between the parties that Mr. Roberts truly was trying to sort through to treat the decedent as fairly as possible." Doc. 42, 3:20-26.

There is a great deal of disagreement among the federal courts as to whether the prohibition of Rule 408 applies when a party wishes to use the details of settlement to show good faith or bad faith. Some find that it falls within the general prohibition while others find that the

"another purpose" exception applies. See, e.g. Clevenger v. Bolingbrook Chevrolet, Inc., 401 F. Supp. 2d 878, 882 (N.D. Ill. 2005) (prohibited); Armenian Assembly of Am., Inc. v. Cafesjian, 746 F. Supp. 2d 55, 64 (D.D.C. 2010) (permitted).

Of note, Rule 408 was amended in 2006 and the advisory committee's notes specifically state "The amendment retains the language of the original rule that bars compromise evidence only when offered as evidence of the 'validity,' 'invalidity,' or 'amount' of the disputed claim. The intent is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim. See, e.g., Athey v. Farmers Ins. Exchange, 234 F.3d 357 (8th Cir. 2000) (evidence of settlement offer by insurer was properly admitted to prove insurer's bad faith)..." Athey dealt with South Dakota law and found that under state court rulings, "an insurer's attempt to condition the settlement of a breach of contract claim on the release of a bad faith claim may be used as evidence of bad faith. Evidence of Farmers' conduct during the settlement conference was not inadmissible under Rule 408 because it was 'offered for another purpose,' and the district court did not abuse its discretion by admitting it." Athey v. Farmers Ins. Exch., 234 F.3d 357, 362 (8th Cir. 2000), citations omitted. Several cases dealing with bad faith in the insurance context have reached the same conclusion. See, e.g. Milhouse v. Travelers Commer. Ins. Co., 982 F. Supp. 2d 1088, 1105 n.10 (C.D. Cal. 2013); Liberty Mut. Ins. Co. v. Davis, 412 F.2d 475, 483 (5th Cir. 1969) (approving jury instructions which read "only a decision made by an insuror who exercises diligence in apprising himself of the material facts is entitled to consideration as having been made in good faith. Therefore, you may consider on this question of good or bad faith whether the investigation made by the insurance company was thorough enough to permit it to come to some fair, honest, and intelligent decision regarding the settlement opportunities in the light of the then existing probabilities"). In a recent Northern District case, the court was faced with a counterclaim that "AGLIC breached its duty of good faith and fair dealing by improperly seeking release from liability as to the $166,675 paid to Melissa James in exchange for forgoing attorneys' fees and costs associated with the interpleader action....The court finds that the settlement communications contained within the challenged portions of the Counterclaim are not offered to

14

prove the validity or amount of a disputed claim, but rather for another purpose, namely, as evidence of AGLIC's course of conduct. Therefore, those communications do not fall within the ambit of Rule 408." Am. Gen. Life Ins. Co. v. James, 2015 U.S. Dist. LEXIS 20768, at *6 and *16 (N.D. Cal. Feb. 19, 2015). In the non-insurance context, courts have also allowed evidence of settlement negotiations to be used to show bad faith in the negotiation process itself. See Grigoryants v. Safety-Kleen Corp., 2014 U.S. Dist. LEXIS 72190, at *9 (W.D. Pa. May 28, 2014) (court rejected argument that Rule 408 prohibition applied when the issue was sanctions for failure to attend court ordered mediation with a good faith interest in settlement). In these cases, the bad faith in question was separable from the underlying liability issue.

In other circumstances, courts have found that the question of bad faith can be so intertwined with the underlying issue of liability that the general prohibition should apply. The Eighth Circuit has stated, "The policy concerns underlying Rule 408 are strongly implicated where an offer of compromise is used to prove an element of the claim the compromise offer was meant to settle." Weems v. Tyson Foods, Inc., 665 F.3d 958, 966-67 (8th Cir. 2011). In one case, the underlying liability issue was ownership of an internet domain name under conflicting claims of cybersquatting and reverse domain name hijacking. Powell v. Powell, 2017 U.S. Dist. LEXIS 110067, at *3 (D. Ariz. Feb. 22, 2017). As part of a sanctions motion, the plaintiff sought to use evidence of settlement negotiations: "Plaintiff argues that the settlement offer was not submitted to prove or disprove the validity of a claim, but was submitted to show that Defendants knew they did not own the Domain Name and were therefore proceeding in bad faith....The issues of whether Defendants were proceeding on their counterclaims in bad faith and the validity of the counterclaims are so intertwined that the Court concludes that submitting the settlement offer was effectively an attempt to disprove the validity of Defendants' Counterclaims in violation of Rule 408." Powell v. Powell, 2017 U.S. Dist. LEXIS 110067, at *19-20 (D. Ariz. Feb. 22, 2017). Where the assertion of bad faith is closely tied to the underlying issue of liability, the general prohibition arguably should apply as a matter of policy since a jury is likely to use the evidence in an improper manner.

In the circumstance at hand, there is no danger of that since Defendants only propose using

1  the evidence in the second phase of the trial.  There is no danger that a jury would hear the
2  evidence and weigh it in favor of finding that there was no partnership.  Given that the posture of
3  this case eliminates a core policy concern underlying the Rule 408, evidence relating to settlement
4  negotiations between Defendants and the Trust will be admissible in the second phase of the trial.

Plaintiff has not completely described what the asserted bad faith is in this case.  Plaintiff only provide citation to one case which states "'bad faith' can be many different things, depending on the context. For example: The general rule is that an agent is not liable on a written contract in the name of the principal. So, if the agent has no authority to make the contract, the usual remedy of the third party is on the warranty of authority. But if, in addition to the lack of authority, there is 'bad faith'—that is, the agent enters into the contract without believing, in good faith, that he or she has authority to do so—the California rule makes the agent liable on the contract as a principal." Hill v. Superior Court, 244 Cal. App. 4th 1281, 1287-88 (Cal. App. 1st Dist. 2016).  The court understands that Plaintiff's Section 859 claim is limited to the assertion that Roberts acted in bad faith because he subjectively believed that a partnership existed and decided to deny the Estate the proceeds of the partnership anyway.  In line with this framing of bad faith, Defendants state that their reason for seeking to introduce evidence of the settlement negotiations to show "Mr. Roberts's state of mind at the time following Mr. Elia's death and to demonstrate that there was a good faith dispute between the parties and that Mr. Roberts truly was trying to sort through to treat the decedent as fairly as possible." Doc. 42, 3:23-26.  Based upon this framing of bad faith, statements by Zinkin and Esraelian to Roberts regarding the Trust's position regarding the existence of a partnership is relevant to determining Roberts's state of mind.  Such evidence may be presented in the second phase of the trial.  As to Defendants second point about using settlement correspondences to establish the value of certain equipment belonging to TEP that the Trust has retained, this evidence does not speak to Roberts's state of mind regarding his belief as to the existence of a partnership; it may not be presented.

Defendants' motion is granted in part and denied in part.  Plaintiff's motion is granted in part and denied in part.

**G. Plaintiff's Motion to Exclude Evidence Related to Discussions Within the Trust (Doc. 36)**

Plaintiff seeks to exclude evidence of: (1) settlement agreement and negotiations between Beneficiaries and the Trustee, (2) questions requiring the assertion of attorney client privilege and any comment on the assertion of privilege, and (3) a note by Robyn Esraelian dated April 1, 2015. Doc. 36. Defendants do not oppose exclusion of the April 1, 2015 note but opposes the motion overall. Doc. 49, 2:27-28. The first two bases that Plaintiff raises cover the same material. The specific documents provided by Plaintiff (Doc. 37, Exs. B, C, and D) relate to the decision by Zinkin to resign the position of trustee in favor Ariel Elia to avoid becoming entangled in litigation he did not believe the Trust would win. Zinkin asked for a release of liability from the Beneficiaries which was granted as part of the overall agreement. Doc. 37, Exs. C and D. Defendants argue that "the documents Plaintiff seeks to exclude will show the jury that former Trustee, Harold Zinkin, and his attorney Robyn Esraelian, each disagreed with the positions Plaintiff has taken in this lawsuit and in fact, believed that Alan Elia had no ownership interest in TEP." Doc. 49, 2:9-12. In addition to raising Rule 408, Plaintiff asserts that attorney client privilege applies for communication between the Zinkin and Ariel Elia (as the trustees) and Esraelian (as the Trust's attorney) and seek to prevent any comment on the assertion of privilege. Doc. 36, 7:6-11.

The same reasoning that applied to evidence of settlement negotiations between Roberts and the Trust applies to negotiations between the Trustee and the Beneficiaries. Insofar as there is actual communication to Roberts, the evidence is relevant to determining whether he had a subjective belief in the existence of a partnership which informs the Section 859 bad faith claim. Rule 408's general prohibition will not apply in that circumstance. Similarly, communication with Roberts would not be subject to attorney client privilege as it would not be a confidential. Of the documents specifically cited by Plaintiff, (Doc. 37, Exs. B, C, and D), only one (Ex. B) appears to have been communicated to Roberts. The other documents were not communicated to Roberts and are thus irrelevant to his state of mind; they are excluded.

Plaintiff's motion is granted in part and denied in part.

**IV. Order**

The parties' motion in limine are granted, denied, and reserved as explained above in the discussion.

IT IS SO ORDERED.

Dated:  October 25, 2017                    _____
                                                                    SENIOR DISTRICT JUDGE