**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARIEL ELIA, individually and as Successor Trustee to the Alan Elia Declaration of Trust Dated March 18, 2002,<br><br>Plaintiff<br><br>v.<br><br>JOHN ROBERTS, and individual; TEXAS ENVIRONMENTAL PRODUCTS, INC., a Texas corporation; and TEXAS ENVIRONMENTAL PRODUCTS, a partnership, joint venture or other form of business organization unknown, and DOES 1 through 20, inclusive,<br><br>Defendants | CASE NO. 1:16-cv-0557 AWI EPG<br><br>ORDER RE: POST TRIAL MOTIONS<br><br><br>(Docs. 108, 115, 117, and 118) |

**I. Background**

Defendant John Roberts ("Roberts") founded and owned Texas Environmental Products, Inc. ("TEP Inc.") which manufactured and sold fertilizer. Alan Elia ("Alan Elia") sold fertilizer in the Fresno area on behalf of Defendants starting in 2004. Defendants assert that Alan Elia was an independent contractor who worked on commission. Plaintiff asserts that Alan Elia formed a partnership with Roberts; the partnership conducted business as a new entity also named Texas Environmental Products ("TEP Partnership"). Alan Elia died in February 2015. Roberts continued the sale of fertilizer in this area and sold TEP Inc. in December 2015. Plaintiff Ariel Elia ("Ariel Elia" or "Plaintiff") contends that this sale also encompassed TEP Partnership. Defendants contend that TEP Partnership does not exist.

Alan Elia created a trust in 2002 ("Trust") whose beneficiaries are his children Ariel and Britz Elia ("Beneficiaries"). Alan Elia's interest in the business relationship with Defendants belongs to the Trust. Alan Elia was the original trustor/trustee. Robyn Esraelian was the attorney who represented the Trust. After Alan Elia's passing, Harold Zinkin ("Zinkin") became the trustee. In 2015, Zinkin and Esraelian communicated with Roberts about monies owed to the Trust. They attempted to reach a settlement based on an understanding that Alan Elia was an independent contractor. However, the Beneficiaries opposed the settlement, arguing that Alan Elia was a partner. Based on this difference of opinion, the Beneficiaries and Zinkin agreed that Ariel Elia would replaced Zinkin as the trustee.

In February 2016, Ariel Elia, both in her personal capacity and as the trustee for the Trust, filed suit against Defendants on claims of accounting, breach of fiduciary duty (to the partnership), and declaratory relief. Additionally, Plaintiff sought an additional double damages penalty under Cal. Prob. Code § 859 for a bad faith breach of fiduciary duty to a trust. Plaintiff proceeded under two theories of monetary relief. First, under the theory that Alan Elia was a partner, Plaintiff sought 50% of the profits from fertilizer sales in 2015 and 50% of the proceeds from the sale of TEP Partnership. Second, under the theory that Alan Elia was an independent contractor, Plaintiff sought the commission on any sales he made in January and February of 2015.

An eight day jury trial was held, starting October 31, 2017. The jury found that Alan Elia and Roberts were not partners but that Alan Elia was in a contractual relationship with TEP Inc. and was owed commission on sales made; the jury awarded Plaintiff $452, 937.64. Doc. 105. Defendants have filed a motion to amend judgment, or in the alternative a new trial. Doc. 117. Plaintiff has made two motions to amend judgment and a motion for costs. Docs. 108, 115 and 118. All motions are opposed.

**II. Reduction of Damage Award**

In this case, Defendants argue that the jury did not follow the court's instructions and awarded a damages amount that exceeds what is permitted under the breach of contract claim. Defendants seek to have the damages reduced or to have a new trial on the issue of contract

2

1  damages only. Plaintiff opposes the motion.

2  A party may make a motion under Fed. Rule Civ. Proc. 59(e) to alter or amend a judgment. A motion to reduce damages is evaluated under the Rule 59 standards. <u>Browning-Ferris Indus. v. Kelco Disposal</u>, 492 U.S. 257, 279 (1989). "A Rule 59(e) motion is appropriate 'if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" <u>Circuit City Stores, Inc. v. Mantor</u>, 417 F.3d 1060, 1063 n.1 (9th Cir. 2005), quoting <u>Sch. Dist. No. 1J, v.Multnomah County v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993). In terms of a jury damage award, a court "will not reverse the jury's assessment of the amount of damages unless the amount is grossly excessive or monstrous, or unless the evidence clearly does not support the damage award. A damage award also cannot stand if it could only have been based on speculation or guesswork." <u>Blanton v. Mobil Oil Corp.</u>, 721 F.2d 1207, 1216 (9th Cir. 1983), citations omitted. "Where an award of damages is grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork,' and gives rise to an inference that 'passion and prejudice' tainted the jury's finding of liability, a new trial may be in order. As we have made clear, however, 'where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict.'" <u>Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local No. 287</u>, 175 F.3d 680, 689 (9th Cir. 1999), citing <u>Los Angeles Memorial Coliseum Comm'n v. National Football League</u>, 791 F.2d 1356, 1360 (9th Cir. 1986) and <u>Seymour v. Summa Vista Cinema, Inc.</u>, 809 F.2d 1385, 1387 (9th Cir. 1987). "Failure by the jury to follow the court's instructions, which results in prejudice to the moving party, is a proper ground for a new trial." <u>AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.</u>, 432 F. Supp. 2d 1319, 1356 (S.D. Fla. 2006), citing <u>Shushereba v. R.B. Industries, Inc.</u>, 104 F.R.D. 524, 529 (W.D. Pa. 1985), <u>Anderson v. Breazeale</u>, 507 F.2d 929 (5th Cir. 1975); <u>Thomas v. Stalter</u>, 20 F.3d 298, 303 (7th Cir. 1994); <u>J.A. Jones Constr. Co. v. Steel Erectors, Inc.</u>, 901 F.2d 943, 944 (11th Cir. 1990).

In giving direction on the breach of contract claim, the jury instructions stated:

> Ariel Elia, as trustee of the Trust, claims that Alan Elia and John Roberts

> and/or Texas Environmental Products, Inc. entered into a contract granting Alan Elia sales commissions in return for his aid in selling John Roberts's and/or Texas Environmental Products, Inc.'s fertilizers.
> Ariel Elia, as trustee of the Trust, claims that John Roberts and/or Texas Environmental Products, Inc. breached this contract by failing to pay Alan Elia commissions for his sales in January and February 2015.
> Ariel Elia, as trustee of the Trust, also claims that John Roberts and/or Texas Environmental Products, Inc.'s breach of this contract caused harm to Alan Elia and/or the Trust, for which John Roberts and/or Texas Environmental Products, Inc. should pay.
>
> ....
>
> Ariel Elia, as trustee of the Trust, claims damages for compensation promised to Alan Elia for his sales of fertilizer in January and February 2015.

Doc. 104, 31:1-9 and 33:12-14. In relevant part, the verdict form asked "8. Did John Roberts and/or Texas Environmental Products Inc. breach that contract with Alan Elia by failing to pay him a commission for sales made in January and February 2015?" to which the jury replied "yes"; the verdict form then asked "9. What are Alan Elia's or the Trustee of the Alan Elia Trust's damages from the breach of contract" to which the jury replied "$452,937.64." Doc. 105, pages 4-6. The language included in the jury instructions and verdict form made it clear that the jury was supposed to determine the amount of commissions Alan Elia earned in January and February 2015 only.

Both parties agree that it is obvious the jury decided to award Plaintiff approximately 50% of the profit for the full 2015 year. See Doc. 117-1, 6:23-7:18; Doc. 122, 3:26-6:18. Indeed, Plaintiff argued that 50% of the profit for the full 2015 year was the appropriate amount of damages in the closing argument. Doc. 122, 4:4-11. That measure of damages is consistent with Plaintiff's main theory that Ariel Elia and John Roberts were partners. Taking a simplistic look at the numbers, the evidence shows that gross sales for 2015 totaled $1,645,826.50 and the cost of those goods was $777,532.10 leaving gross profit for those sales at $868,294.40. Doc. 117-2, Ex. B. The jury award of $452,937.64 amounted to 52.16% of total 2015 gross profits. Even excluding the cost of the goods sold, the jury award amounted to 27.52% of total 2015 gross sales. The award amount bears no relation to a calculation of commission for sales taking place in January and February of 2015.

Thus, there is insufficient evidence to substantiate the jury's monetary award amount given

their determination that Defendants' liability to Plaintiff was based on a commission contract rather than a partnership. While the verdict amount is not adequately supported, there is no evidence that the jury acted with inappropriate motivation. "Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict." Seymour v. Summa Vista Cinema, 809 F.2d 1385, 1387 (9th Cir. 1987). That appears to be the appropriate remedy in this circumstance. As the award amount covered the twelve months of 2015, it must be reduced by five-sixth to correspond to the two months of January and February. That constitutes a sum of $75,489.61 (one-sixth of $452,937.64). When a motion to reduce a jury award of general damages is granted, a plaintiff should be given the option of a new trial on the issue of damages. See Hetzel v. Prince William Cty., 523 U.S. 208, 211 (1998). Plaintiff in this case is given the choice of accepting the lower award amount or a new trial on the issue of damages for a breach of contract.

### III. Prejudgment Interest

Plaintiff seeks an award of prejudgment interest (Doc. 108) under Cal. Civ. Code § 3287(a), which states in relevant part, "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt." Defendants oppose the motion.

"A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day..." Cal. Civ. Code § 3287(a). "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage. The statute does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, depends upon a judicial determination based upon

1 conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his
2 debtor." Fireman's Fund Ins. Co. v. Allstate Ins. Co., 234 Cal. App. 3d 1154, 1173 (Cal. App. 3rd
3 Dist. 1991), quoting Esgro Cent., Inc. v. Gen. Ins. Co., 20 Cal. App. 3d 1054, 1060 and 1062 (Cal.
4 App. 2nd Dist. 1971). "What is critical is not whether the defendant actually knows how much it
5 should pay; rather, it is whether the defendant could have calculated how much it should pay, if it
6 had known how a court would ultimately rule on the legal issues....the liability-damages
7 dichotomy is not controlling; rather, what is controlling is the legal-factual dichotomy." State of
8 Cal. v. Cont'l Ins. Co., 15 Cal. App. 5th 1017, 1043 (Cal. App. 4th Dist. 2017).

      Defendants argue that the amount of commissions could not be determined because Plaintiff "has continuously changed her theory of damages (partnership claim to ½ profits all the way to commission for 2 months) and admitted in the very essence of her Complaint that the counts owed were so uncertain that the only way to ascertain them was through an accounting. John Roberts testified that there was no sum certain percentage of commissions that Alan Elia was paid on any given year." Doc. 124, 5:4-9. Indeed, Defendants assert that "Mr. Roberts had the sole discretion to determine what was paid to Elia in commissions." Doc. 124, 7:10-11. These objections relate to questions of law rather than fact. Defendants recognized that they had an obligation to pay Alan Elia, but were in a dispute with Plaintiff about the nature of the liability. Per Continental Insurance, knowing what the legal rulings would ultimately be, Defendants could have calculated the amount owed in 2015. In this case, the key factual information required was the value of fertilizer that was sold in January and February 2015. That was calculable at the time; it was not a mystery that could only be resolved at trial. Defendants also point out, "there was an additional factual dispute as to whether Roberts should have been provided property that was maintained by the estate and whether the commission amount should have been offset by the value of those retained assets." Doc. 124, 5:23-26. But, the "mere pleading of unliquidated counterclaims does not render unliquidated an otherwise certain or determinable debt owing to the plaintiff." Great W. Drywall, Inc. v. Roel Constr. Co., Inc., 166 Cal. App. 4th 761, 768 (Cal. App. 4th Dist. 2008), quoting Muller v. Barnes, 139 Cal. App. 2d 847, 850 (Cal. App. 2nd Dist. 1956). Plaintiff is entitled to prejudgment interest starting from March 1, 2015.

## IV. Treble Damages

Plaintiff argues that treble damages should apply because Defendants failed to have a written sales commission agreement with Alan Elia in violation of California law. Doc. 119, 8:4-10:13. "Whenever a manufacturer, jobber, or distributor is engaged in business within this state and uses the services of a wholesale sales representative, who is not an employee of the manufacturer, jobber, or distributor, to solicit wholesale orders at least partially within this state, and the contemplated method of payment involves commissions, the manufacturer, jobber, or distributor shall enter into a written contract with the sales representative." Cal. Civ. Code § 1738.13(a). "A manufacturer, jobber, or distributor who willfully fails to enter into a written contract as required by this chapter or willfully fails to pay commissions as provided in the written contract shall be liable to the sales representative in a civil action for treble the damages proved at trial." Cal. Civ. Code § 1738.15. Plaintiff argues

> The jury's verdict plainly establishes the breach of an agreement to pay commissions to someone who qualifies by virtue of the undisputed facts as a wholesale sales representative acting on behalf of a manufacturer, jobber or distributor. Since the trebling of damages and the entitlement to an award of attorney's fees and costs in addition to any other recovery is mandated by the statute, those amounts are required to be included in the judgment. Their omission is the result of manifest error of law, or is an omitted award that is the necessary implication of the jury's verdict.

Doc. 119, 10:6-13.

Defendants make several interrelated arguments, chief of which are that Plaintiff should not be permitted to amend their complaint post-trial and that Plaintiff has not proven the elements of Section 1738.15. In the joint pretrial statement, Defendants did agree that "Elia acted as an independent commissioned contractor....There is no written agreement." Doc. 32, 3:7-10. However, Defendants assert that allowing Plaintiff to seek treble damages would "unduly prejudice Defendant. Specifically on the issue of prejudice, no discovery was done regarding the nature of Alan Elia's categorization as a wholesaler or whether he was selling the product of TEP for the purpose of resale versus to the ultimate consumer." Doc. 125, 4:14-19.

During trial, the court permitted Plaintiff to amend their case to proceed in the alternative

on general breach of contract claim. This amendment did not encompass Sections 1738.13 and 1738.15. With regards to treble damages specifically, Plaintiff made clear in the joint pretrial statement that treble damages were sought under Cal. Prob. Code § 859. Doc. 32, 12:26-13:6. There was no mention of Section 1738.15 whatsoever; Defendants had no notice to prepare that kind of defense. Amendment should be freely granted unless there is a reason to deny it such as "undue prejudice to the opposing party by virtue of allowance of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). To inject treble damages based on Section 1738.15 at this post-trial stage would be unduly prejudicial. It was incumbent on Plaintiff to raise this issue before trial.

Even assuming that amendment were permitted, Plaintiff has not met the burden of meeting all of the elements of Section 1738.15. First, the requirement of a written contract applies to a whole sales representative as defined as "any person who contracts with a manufacturer, jobber, or distributor for the purpose of soliciting wholesale orders, is compensated, in whole or part, by commission, but shall not include one who places orders or purchases exclusively for his own account for resale and shall not include one who sells or takes orders for the direct sale of products to the ultimate consumer." Cal. Civ. Code § 1738.12(e). Plaintiff argues that Alan Elia was involved in wholesale transactions as "The fertilizers sold by Alan Elia were always sold in large quantities to large farmers who used them to make or as a component of other products, the crops they were growing and that were ultimately intended for resale or sale to ultimate consumers." Doc. 119, 9:22-25. This argument misinterprets the term "wholesale" as it applies to the relevant statutes. Plaintiff admits that the farmer purchasers generally used the fertilizers themselves rather than reselling the fertilizer to other parties. Thus, they were the ultimate consumer of the fertilizer. It has not been established that Alan Elia was involved in wholesale transactions. Second, treble damages only apply in situations where the employer "willfully fails to enter into a written contract as required by this chapter." Cal. Civ. Code § 1738.15. "[A] manufacturer's failure to comply with the Act would not be willful if the manufacturer proved that its failure was 'the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present.' For example, a failure to comply would not be willful if the

1  manufacturer reasonably and in good faith believed that a person did not qualify as a 'wholesale
2  sales representative' within the meaning of the Act." Baker v. Am. Horticulture Supply, Inc., 186
3  Cal. App. 4th 1059, 1076 (Cal. App. 2nd Dist. 2010), quoting Kwan v. Mercedes-Benz of N. Am.,
4  Inc., 23 Cal. App. 4th 174, 185 (Cal. App. 1st Dist. 1994). Nothing in the jury's verdict speaks to
5  the question of whether Defendant TEP Inc. acted willfully within the meaning of Section
6  1738.15.

7  These are factual determinations that must be made by a jury rather than the court. "[T]he
8  right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity
9  as well as other actions....In diversity cases, of course, the substantive dimension of the claim
10 asserted finds its source in state law, but the characterization of that state-created claim as legal or
11 equitable for purposes of whether a right to jury trial is indicated must be made by recourse to
12 federal law." Simler v. Conner, 372 U.S. 221, 222, 83 S. Ct. 609, 610-11 (1963). "First, we
13 compare the statutory action to 18th-century actions brought in the courts of England prior to the
14 merger of the courts of law and equity. Second, we examine the remedy sought and determine
15 whether it is legal or equitable in nature." Tull v. United States, 481 U.S. 412, 417-18 (1987).
16 California courts recognize that the treble damage "civil penalties, is imposed as punishment or
17 deterrence of the defendant, rather than to compensate the plaintiff. In this, it is akin to punitive
18 damages." Kwan v. Mercedes-Benz of N. Am., Inc., 23 Cal. App. 4th 174, 184 (Cal. App. 1st
19 Dist. 1994), citing Troensegaard v. Silvercrest Industries, Inc., 175 Cal. App. 3d 218, 226-28 (Cal.
20 App. 1st Dist. 1985). As determined on the first day of trial, punitive damages are matters for
21 which the parties are entitled to a jury trial. Doc. 91, Transcript, 10:9-11. "A civil penalty was a
22 type of remedy at common law that could only be enforced in courts of law. Remedies intended to
23 punish culpable individuals, as opposed to those intended simply to extract compensation or
24 restore the status quo, were issued by courts of law, not courts of equity." Tull v. United States,
25 481 U.S. 412, 422 (1987). Thus, Defendants have a right to jury trial on whether the "wholesale"
26 and "willfully" requirements of Sections 1738.13 and 1738.15 are met. There is no basis for the
27 court to award treble damages.

## V. Attorney's Fees

In the pretrial statement, Plaintiff sought attorney's fees "pursuant to the provisions of Probate Code §859." Doc. 32, 13:5-6. Section 859 permits, but does not require, the award of attorney's fees and costs if there is a finding that "a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to...a trust, or the estate of a decedent..." Cal. Prob. Code § 859. Because the jury did not find the existence of a partnership, the trial did not move on to the second phase to determine whether there was any bad faith. Thus, there is no basis to award attorney's fees under Section 859.

In the motion (Doc. 118), Plaintiff now seeks attorney's fees under Cal. Civ. Code § 1738.16 which states "In a civil action brought by the sales representative pursuant to this chapter, the prevailing party shall be entitled to reasonable attorney's fees and costs in addition to any other recovery." In order for this provision to apply, Plaintiff must prevail in a Section 1738.15 claim. As discussed above, Plaintiff has not done so in this case. Thus, there is no basis for awarding attorney's fees.

## VI. Bill of Costs

Plaintiff submitted a bill of costs. Doc. 111. Defendants ask the court to exercise discretion to deny costs based on the argument that Plaintiff did not prevail on its main theory of liability. Doc. 112. The Clerk of the Court denied the entire request for costs, deferring to the court for a legal decision on Defendants' arguments. Doc. 113. If a party succeeds on an affirmative defense, that "can support a discretionary decision to deny costs to a prevailing party in a contract action." Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1023 (9th Cir. 2003). The court declines to exercise that discretion. The jury found that Defendant TEP Inc. breached a contract with Alan Elia and owed him monetary damages. Plaintiff is the prevailing party entitled to costs. Under 28 U.S.C. § 1920, a prevailing party may recover

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where

```
            the copies are necessarily obtained for use in the case;
        (5) Docket fees under section 1923 of this title;
        (6) Compensation of court appointed experts, compensation of interpreters, and
            salaries, fees, expenses, and costs of special interpretation services under section
            1828 of this title.
```

The only cost that Plaintiff requested that is not allowed is $1,000 for mediation fees. "[N]othing in 28 U.S.C. § 1920 provides for the costs of a mediator." Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc., 260 F.3d 1054, 1061 (9th Cir. 2001). Plaintiff's request for recovery of mediation fees is denied. Plaintiff's remaining request for $9,099.54 in costs is granted.

## VII. Order

Defendants' request to amend judgment (Doc. 117) is GRANTED. The monetary award is reduced from $452,937.64 to $75,489.61. Plaintiff may request a new trial on the issue of damages from breach of contract. Plaintiff must make a formal filing to that effect by 4:00 PM on October 26, 2018.

Plaintiffs' request for prejudgment interest (Doc. 108) is GRANTED. Plaintiff is awarded interest starting from March 1, 2015.

Plaintiffs' request for treble damages (Doc. 118) is DENIED.

Plaintiffs' request for attorney's fees (Doc. 118) is DENIED.

Plaintiff's request for costs (Doc. 115) is GRANTED. Plaintiff is awarded $9,099.54 in costs.

IT IS SO ORDERED.

Dated:   October 4, 2018                   _____
                                            SENIOR DISTRICT JUDGE