**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARIEL ELIA, individually and as Successor Trustee to the Alan Elia Declaration of Trust Dated March 18, 2002,<br><br>Plaintiff<br><br>v.<br><br>JOHN ROBERTS, and individual; TEXAS ENVIRONMENTAL PRODUCTS, INC., a Texas corporation; and TEXAS ENVIRONMENTAL PRODUCTS, a partnership, joint venture or other form of business organization unknown, and DOES 1 through 20, inclusive,<br><br>Defendants | CASE NO. 1:16-cv-0557 AWI EPG<br><br>ORDER RE: MOTION FOR RECONSIDERATION<br><br>(Doc. 137) |

## I. Background

Defendant John Roberts ("Roberts") founded and owned Texas Environmental Products, Inc. ("TEP Inc.") which manufactured and sold fertilizer. Alan Elia ("Alan Elia") sold fertilizer in the Fresno area on behalf of Defendants starting in 2004. Defendants assert that Alan Elia was an independent contractor who worked on commission. Plaintiff asserts that Alan Elia formed a partnership with Roberts; the partnership conducted business as a new entity also named Texas Environmental Products ("TEP Partnership"). Throughout their business relationship, Roberts handled the manufacturing of the fertilizer and Alan Elia handled all of the sales. Defendants and Alan Elia roughly split the profits from the business each year. Alan Elia died at the end of February 2015. Roberts continued the sale of fertilizer in this area and sold TEP Inc. in December 2015.

Alan Elia created a trust in 2002 ("Trust") whose beneficiaries are his children Ariel and Britz Elia ("Beneficiaries"). Alan Elia's interest in the business relationship with Defendants belongs to the Trust. Alan Elia was the original trustor/trustee. Robyn Esraelian was the attorney who represented the Trust. After Alan Elia's passing, Harold Zinkin ("Zinkin") became the trustee. In 2015, Zinkin and Esraelian communicated with Roberts about monies owed to the Trust. They attempted to reach a settlement based on an understanding that Alan Elia was an independent contractor. However, the Beneficiaries opposed the settlement, arguing that Alan Elia was a partner. Based on this difference of opinion, the Beneficiaries and Zinkin agreed that Ariel Elia would replaced Zinkin as the trustee.

In February 2016, Plaintiff Ariel Elia, both in her personal capacity and as the trustee for the Trust, filed suit against Defendants on claims of accounting, breach of fiduciary duty (to the partnership), and declaratory relief. Plaintiff contends that the December 2015 sale also encompassed TEP Partnership. Defendants contend that TEP Partnership does not exist. Additionally, Plaintiff sought an additional double damages penalty under Cal. Prob. Code § 859 for a bad faith breach of fiduciary duty to a trust. Plaintiff proceeded under two theories of monetary relief. First, under the theory that Alan Elia was a partner, Plaintiff sought 50% of the profits from fertilizer sales in 2015 and 50% of the proceeds from the sale of TEP Partnership. Second, under the theory that Alan Elia was an independent contractor, Plaintiff sought the commission on any sales. The second theory was not clearly part of Plaintiff's complaint or joint pretrial statement. See Docs. 1 and 32. The court permitted Plaintiff to amend claims to conform to evidence.

An eight day jury trial was held, starting October 31, 2017. The jury found that Alan Elia and Roberts did not have a partnership agreement but that Alan Elia was in a contractual relationship with TEP Inc. and was owed commission on sales made; the jury awarded Plaintiff $452,937.64. Doc. 105. That amount is roughly equivalent to 50% of the profits from the entirety of 2015. In post trial motions, both parties made motions to amend judgment. Docs. 108, 117, and 118. In key part, Defendants' motion for remittitur was granted. Plaintiff's monetary award was reduced by five-sixth to $75,489.61 to correspond to the profits from January and February;

2

Plaintiff was given the option of accepting the reduced award or the option of a new trial on the issue of damages from breach of sales commission contract. Doc. 132. Plaintiff opted for a new trial and made the present motion for reconsideration of the order granting remittitur. Docs. 133 and 134.

## II. Legal Standard

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009), citations and quotations omitted. Reconsideration is an "extraordinary remedy," to be used "sparingly as an equitable remedy to prevent manifest injustice." Wood v. Ryan, 759 F.3d 1117, 1121 (9th Cir. 2014), quoting Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001), citations and quotations omitted.

## III. Discussion

### A. Necessity of Remittitur

Plaintiff disagrees that remittitur is proper in this case. At base, remittitur was granted because the jury did not follow the jury instructions correctly. A court "will not reverse the jury's assessment of the amount of damages unless the amount is grossly excessive or monstrous, or unless the evidence clearly does not support the damage award. A damage award also cannot stand if it could only have been based on speculation or guesswork." Blanton v. Mobil Oil Corp., 721 F.2d 1207, 1216 (9th Cir. 1983), citations omitted. "Failure by the jury to follow the court's instructions, which results in prejudice to the moving party, is a proper ground for a new trial." AlphaMed Pharm. Corp. v. Arriva Pharm., Inc., 432 F. Supp. 2d 1319, 1356 (S.D. Fla. 2006),

3

citing Shushereba v. R.B. Industries, Inc., 104 F.R.D. 524, 529 (W.D. Pa. 1985), Anderson v. Breazeale, 507 F.2d 929 (5th Cir. 1975); Thomas v. Stalter, 20 F.3d 298, 303 (7th Cir. 1994); J.A. Jones Constr. Co. v. Steel Erectors, Inc., 901 F.2d 943, 944 (11th Cir. 1990). Because the jury misunderstood the jury instructions, their damages award was not supported by the evidence presented at trial. Both the jury instructions and verdict form stated that damages for breach of a sales commission contract commissions were to be based on commissions for sales made in January and February 2015. Instead, the jury awarded damages based on profits for the entirety of 2015. Plaintiff argues that the jury was free to use the jury instructions given for breach of partnership/fiduciary duty in calculating damages. See Doc. 135, 2:1-4:21. That is an incorrect interpretation of the jury instructions.

Plaintiff also argues that California law allows for commissions to be paid on sales that took place after the end of the sales commission relationship if a person was the procuring cause of the sale: "an agent selling goods on commission is entitled to a commission on goods sold by him during the continuance of the agency, although the goods were not delivered or paid for, or even where the orders were not received by the principal, until after the termination of the relationship. If the contract contemplates that the agent shall receive compensation for sales of which the agent was the procuring cause, the agent is entitled to a commission on sales procured by him although the sales were actually consummated by the principal after the termination of the agency." Zinn v. Ex-Cell-O Corp., 24 Cal. 2d 290, 296 (Cal. 1944), quoting 3 C.J.S., Agency § 187. "[T]he rule is that if an agent (or broker) is the inducing or procuring cause of the contract, he is entitled to the commission, even though the principal takes it out of his own hand and completes it. Stiglich v. Jani-King of Cal., 2008 Cal. App. Unpub. LEXIS 9390, *13-14 (Cal. App. 4th Dist. 2008) (awarding commissions even after the sales commission employment relationship ended), quoting Brea v. McGlashan, 3 Cal. App. 2d 454, 465, 39 P.2d 877, 882 (Cal. App. 2nd Dist. 1934). "For this theory to apply, the governing contract must either provide that a commission is earned by 'procuring' a sale or not contain contrary provisions." Tuma v. Eaton Corp., 2011 U.S. Dist. LEXIS 81085, *3 (S.D. Cal. 2011). While this is true, the jury instructions and verdict form were not worded in that manner. This theory of recovery was not raised at the

time those documents were being crafted.  Plaintiff argues that "The jury plainly rejected the evidence cited in the order and in the motion to the effect that the contract terms only allowed Elia to recover commissions for the two months that he was alive in 2015 and accepted the conflicting testimony, provided by the same person, that Elia was entitled to receive a commission on a sale to a customer which he had originated regardless of how that sale was consummated or whether Elia was personally involved at all." Doc. 135, 16:22-27.  The problem is that the limitation to January and February of 2015 was embodied in the jury instructions and verdict form.  While the jury can choose to disbelieve some of the evidence, it can not reject the jury instructions.

**B. Waiver**

Second, Plaintiff argues that Defendants waived their ability to ask for remittitur because they did not make that objection before the jury was discharged. Doc. 135, 12:1-2.  "When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused." Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1331 (9th Cir. 1995).  At that point, additional questions can be posed to the jury to resolve the inconsistency.  Defendants argue that this requirement only applies when there is an internal inconsistency in the verdict.  "Where the jury's verdict is in no way internally inconsistent, there is no more basis for resubmission to the jury than in any other case in which a party believes the verdict to be inconsistent with the record. The usual procedures for overturning jury verdicts as inconsistent with the facts therefore suffice and may be used without objecting to the verdict before the jury is dismissed." Kode v. Carlson, 596 F.3d 608, 611 (9th Cir. 2010).  The nature of Defendants' objection to the verdict is that the jury's damage award amount does not follow from the evidence.  Defendants did not waive their remittitur argument by failing to object before the jury was discharged.  Further, this argument was not raised by Plaintiff in opposition to Defendants' original motion for remittitur. See Doc. 122.

**C. Scope of New Trial**

| | |
|---|---|
| 1 | In the prior order granting remittitur, Plaintiff was given the choice of accepting the lower |
| 2 | amount or a new trial on the issue of damages for a breach of contract. Plaintiff argues that the |
| 3 | new trial should encompass all issues, including liability for breach of partnership agreement, and |
| 4 | not be limited to damages for breach of contract. When liability and damages are distinct and |
| 5 | there is no evidence of prejudice, a new trial limited to damages is appropriate. Cosby v. |
| 6 | Autozone, Inc., 445 F. App'x 914, 917 (9th Cir. 2011) ("In the event Mr. Cosby refuses remittitur, |
| 7 | a new trial will go only to the issue of damages. The issues of liability and damages are distinct, |
| 8 | and there is no evidence in the record—and neither party contends—that any passion or prejudice |
| 9 | affected the jury's verdict on liability."); see also Edwards v. Sears, Roebuck & Co., 512 F.2d 276, |
| 10 | 282 (5th Cir. 1975) ("If the passion, prejudice, caprice, undue sympathy, arbitrariness or more |
| 11 | taints only the damage award and not the liability assessment, the proper response is a remittitur or |
| 12 | a new trial addressed to damages alone."). As stated in the last order, there is no evidence that the |
| 13 | jury acted with inappropriate motivation in this case. |
| 14 | In terms of liability, the jury found that Plaintiff and Defendants did not have a partnership |
| 15 | agreement; instead, Plaintiff and TEP Inc. had a sales commission contract relationship. See Doc. |
| 16 | 105. For damages, the jury determined that the amount of damages from the breach of sales |
| 17 | commission contract to be $452,937.64. See Doc. 105. The question of liability for breach of |
| 18 | partnership agreement and damages for breach of sales commission contract are analytically |
| 19 | distinct. The relevant facts in this case are somewhat analogous to that of Real v. Cont'l Grp., Inc., |
| 20 | 627 F. Supp. 434 (N.D. Cal. 1986), an employment age discrimination case. The jury found in |
| 21 | favor of the plaintiff-employee and awarded back pay while finding no entitlement to emotional |
| 22 | distress or punitive damages. Id. at 438. However, the back pay awarded exceeded the amount |
| 23 | that was due (based on the evidence presented) through the date of trial. Id. at 451. Further, the |
| 24 | jury was instructed to cut off the back pay award at an earlier date based on defendant's good faith |
| 25 | offer for reinstatement to a comparable position. Id. at 451. With these facts, the trial court |
| 26 | granted remittitur with the option of a new trial limited to back pay damages; the court specifically |
| 27 | found that there would be no need to revisit the questions of emotional distress and punitive |
| 28 | damages in a potential new trial. Id. at 438. In sum, the court found that there was no need to |

revisit the overall issue of liability or even alternate forms of damages that were rejected by the jury in the first trial. In another case, a jury found in favor of plaintiff on a defamation claim but in favor of the defendant on the wrongful termination claim. Shaffer v. Ariz. Citizens Clean Election Comm'n, 2006 U.S. Dist. LEXIS 2196, at *1 (D. Ariz. Jan. 19, 2006). The trial court determined that the damages awarded included amounts for both defamation and wrongful termination. Id. at *9. The court granted remittitur but only offered the option of a new trial on defamation damages without reopening the question of liability for wrongful termination. Id. at *9. In contrast, one court found that liability and damages intertwined when the original verdict did not specify what specific actions constituted the Section 1983 violation that gave rise to damages:

> The problem with attempting to separate the issue of damages from the issue of liability in any retrial of this case is that the case was presented to the first jury on several different theories of liability. For example, plaintiff alternatively contended that defendants violated his Fourth and Fourteenth Amendment rights by (1) striking him in the ribs, (2) applying unreasonable pressure to his throat, and (3) unreasonably chaining him to the grate in his cell rather than using an alternative means of restraint. The damages which would flow from each of those alleged actions would, of necessity, be different. Without knowing which conduct the first jury found to constitute the constitutional violation, the second jury would be unable to assess the damages proximately resulting from that conduct.

Antoine v. Cty. of Sacramento, 583 F. Supp. 2d 1174, 1176 (E.D. Cal. 2008) (court faced with motion for new trial and did not consider remittitur).

In the present case, the verdict form was clear. The jury found that there was no partnership agreement between the parties; there was a sales commission contract which Defendants breached, giving rise to damages. The question of liability for breach of partnership agreement is not intertwined with the sales commission contract damages. However, Plaintiff's alternate argument that California law allows commissions to be paid on sales that took place after the end of the sales commission relationship may be relevant to a jury's determination of sales commission contract breach damages. Though this theory was not encompassed in the jury instructions and verdict form in the first trial, the court will not rule out the possibility that it may be included in any future instructions or verdict form.

**IV. Order**

Plaintiff's motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: September 30, 2019

_____
SENIOR DISTRICT JUDGE